The opinion of the court was delivered by
Watkins, J.
The object of this suit is to obtain the enforcement of an alleged contract which the defendants entered into to educate five boys of indigent parents, to be appointed annually from the public schools of the city of New Orleans; that is to say, to coerce the said administrators to receive annually five cadets, to be *863 appointed by the mayor, and to give them the regular course of education established by that institution.
It is alleged that the consideration of said contract was the remission on the part of the city of the taxes assessed against the property formerly known as the Mechanics’ Institute, for several years, so as to enable the then University of Louisiana to purchase the same for educational purposes.
It is further alleged that by an act of the Legislature additional powers were conferred upon said university, and “ in recognition of the benevolent acts and munificent gifts of Paul Tulane the corpo - rate name of the University of Louisiana was changed to the Tulane University of Louisiana, and created in lieu and stead of the State Board of Administrators of the University of Louisiana the Board of Administrators of the Tulane Educational Fund.”
It is further alleged that demand was made by the mayor of the city upon the defendant administrators to receive five boys to be by him appointed annually, in conformity to the aforesaid contract— naming the five boys to be by him appointed — and that said demand was by the defendant administrators refused.
Plaintiff’s prayer for judgment conforms to the allegation of its petition.
The defendants’ answer avows their willingness, “ as provided in said Ordinance No. 6767, to educate five boys of indigent parents, to be appointed annually from the public schools by the mayor and administrators of the city of New Orleans; meaning thereby that there shall be five scholarships so appointed, the vacancies in which are to be filled annually, and not as illegally claimed, that every year the mayor is entitled to appoint five students who are to receive free education at the hands of this board.”
Further answering, they aver “ that the said ordinance was the subject of contention between the mayor of said city and Board of Administrators of the University of Louisiana, as to what the rights of the mayor was under the said ordinance, and after much discussion the said board * * on the 14th of April, 1883, adopted a resolution * * to the effect that the obligation of said board extended only to furnishing free tuition to five students, and that the mayor had power to fill all vacancies in the five, whenever occurring, so that there should be always five students in the university without cost, and no more. That on the 10th of May, 1883, a resolution was *864 adopted by said board * * which purported to be a compromise between said city and Board of Administrators, proposed by the city •attorney, by which said board agreed to educate ten (10) boys of •indigent parents, to be appointed as mentioned in said Ordinance .6767, all-vacancies to be filled by the mayor. It being the intent of said resolution that ten boys should be so educated free in said University of Louisiana, the teim of tution to be four years.”
' The defendants further aver and repres.nt that during the ten .years that have intervened between the date of the adoption of the said resolution and the receipt of the mayor’s demand of date May 10, 1892, the selection and appointment of ten students has been made in accordance with the aforesaid compromise; and they further . and finally state that, ‘ ‘ without admitting any legal liability in the premises, and with full reservation of all and singular their legal rights in the premises, they are willing that ten students should continue to be received and educated in the manner and according to the terms of said compromise.”
On these issues the following judgment was pronounced in favor of he plaintiff, namely: “Declaring the contract entered into between the defendant and the city of New Orleans to be in full force and effect, and commanding the said board to receive, within thirty days, and to continue to receive each and every, year thereafter, five boys, to be selected under said contract by the mayor of New Orleans, and to retain said boys, yearly appointed as aforesaid, until their collegiate course is completed, under the rules and regulations of the said university.”
From this judgment the defendants prosecute this appeal.
It is evident that there are but two questions for our consideration; (1) the import, of the defendant’s original contract; (2) the effect of the alleged compromise.
, While the contract is found in a proviso at the foot of the ordinance, yet we think it but right that we should reproduce the entire ordi - nance, and have extracted same from the defendant’s brief:
“ Oity Ordinance No. 6767.

(No. 6767. Administration Series.)
" Whereas, it is to the interest of the people of this city that every facility be afforded the University of Louisiana for increasing its use *865 fulness and furthering its purposes of education, now so well begun and ably conducted, and it is represented to the council by the president of the board of administrators that more room and buildings are needed, and that the building known as the ‘ Mechanics) Institute ’ is, from its location and construction, the only suitabl- and possible addition to be had;
“ Whereas, it is further represented by said board that an opportunity now offers by which they can obtain every right and title in and to said Mechanics’ Institute for a small price, but that they are prevented or deterred from acting because of certain taxes claimed by the city of New Orleans as due by the Mechanics’ Society, and asserted to be an incumbrance on said property; and whereas, said taxes are only due for such times as said building was not occupied by the ‘ society,’ and then only on the value of the parts not so occupied, inconsistencies which would greatly reduce the said taxes as they now stand; and further, considering that the partial title now existing in the State has prevented and will forbid the subjection of said property by the city to the payment of said taxes by a sale or other conveyance, in that no satisfactory and indefeasible title can be made to a purchaser; therefore:
‘1 Section 1. Be it ordained by the Mayor and Administrators of the Oity of New Orleans in council convened, That any tax lien, privie ege or mortgage heretofore claimed by the city of New Orleans for any municipal, taxes assessed on the ‘ Mechanics’ Society, ’ for any and all years, and written or recorded as bearing on the property known as the ‘ Mechanics’ Institute,’ be relinquished, canceled and annulled as to said property whenever the University of Louisiana, through its Board of Administrators, shall have obtained full title to and possession of said property, and to this end the mayor is instructed to intervene in the act affecting such transfer of title and giving possession, to carry out the provisions of this ordinance, and until said intervention and act has been completed said taxes and privileges, etc., shall continue undisturbed; provided nothing herein shall be construed as relieving the ‘ Mechanics’ Institute ’ from its obligations for said taxes.
“Sec. 2. Be it ordained, etc., That a copy of the title to said Board of Administrators, embodying the intervention of the mayor as aforesaid, shall be furnished the administrator of accounts of the city of New Orleans, and the same shall be and constitute his *866 authority to erase and annul from his hooks, and from those of the recorder of mortgages, all of said taxes, privileges and mortgages, so far as they affect said pioperty — the Mechanics’ Institute.
“ Provided, that the said institute binds itself to educate five boys of indigent parents, to be appointed annually from the public schools by the mayor and administrators of the city of New Orleans.
“Adopted by the council of the city of New Orleans, December 21, 1880.”
The controverted question is now, as it has been for many years past, as to the correct interpretation to be placed upon the phrase “to educate five boys of indigent parents, to be appointed annually,” as it occurs in the proviso to Ordinance 6767.
Both the city and the administrators have given their respective interpretations thereof, as the foregoing sketch of the pleadings discloses, and the district judge having accepted that of the plaintiff as the correct one it is our province to det:-rmine whether his opinion is erroneous vel non.
The code has established and formulated certain fixed rules for “the interpretation of agreements.”
One article declares that “ legal agreements having the effect of law upon the parties, none but the parties can abrogate or modify them. * * * That courts are bound to give legal effect to all such contracts according to the true intent of all the parties.
“That the intent is to be determined by the words of the contract, when these are clear and explicit, and lead to no absurd consequence.” R. O. O. 1945.
Another article declares that “ the words of the contract are to be understood like those of a law, in the common and usual signification, without attending so much to grammatical rules as to general and popular use.” R. C. O. 1946.
Another article declares that “ all clauses of an agreement are interpreted, the one by the other, giving to each the sense that results from the entire act.” R. O. O. 1955.
Following these rules for the interpretation of agreements we are of opinion that the judge a quo gave a correct interpretation to the language of the proviso of the ordinance. The intent and purpose oí the parties are plainly and easily discoverable from “ the words of the contract.” The obligation of the defendant was “to educate five boys of indigent parents, to be appointed annually from the public *867 schools.” These words mean just what they say, “five boys * * appointed annually;” and, as the courts are bound to give legal effect to all contracts according to the intent of the parties, we feel bound to affirm the correctness of the ruling of the district judge in this respect.
With reference to the alleged compromise, set up as a matter of defence, there is nothing said in the judgment, but from the tenor of it, it is to be presumed the judge disregarded it; he could not have otherwise reached the conclusions he did.
The following is an extract from the minutes of the Board of Administrators of the University of Louisiana of March 28,1888, viz.:
“ Extracts prom Minutes.
I ‘ Extract from minutes of the Board of Administrators of the University of Louisiana, held March 28, 1888. Present: President J. H. Kennard, and Messrs. Howard, Macon, Labatt, Lavillebeuvre, Seymour, Lafitte and Mayor Behan, constituting a quorum.
“ The president stated that the meeting had been called at the request of the mayor, who wished to learn exactly the agreement concerning the five scholarships in the academical department of the university, allowed the city of New Orleans. Mr. Mayor Behan wished to know whether he had the right to appoint five persons to scholarships each year, without considering whether those appointed in previous years remain at the university or not, or whether it had been agreed that not more than five persons appointed by the city should be entitled to tuition free at any one time. After much discussion, during which Mr. Baldwin entered and took his seat, it was decided, upon motion of Mr. Macon, that the decision of the question should be postponed until the original resolution of the board, which the secretary was unable to find, granting the right to the city, could be found.
“ Respectfully,
“ Chas. B. Stafford, Secretary."
The following is an extract from the minutes of the board in April, 1888, viz.:
II Be it resolved, That the sense of this board with reference to the rights of the city of New Orleans to the appointment of free students to the University of Louisiana is that the obligation resting on the university, under the existing ordinance and agreement, extends *868 only to furnishing tuition free to five students; that the mayor has power to fill all vacancies in the five whenever occurring; the true inten and meaning being there shall be five students in the university without cost, and no more.
“ Mr. Labatt and Mayor Behan voted against the resolution.”
The following is an extract from the minutes of the Board of Administrators on the 16th of May, 1883, viz.:
“ Extract of minutes of Board of Administrators of the University of Louisiana, held May 10, 1883:
“ The president stated that the object of the meeting was to consider the matter of city scholarships. Judge Kennard stated that he had had a conference with the city attorney, and that to save the university from the expense of litigation he had agreed to present to the board a resolution drawn up by the city attorney, with some changes agreed to by the same person, settling the matter by compromise. The president then read the motion, which was as follows :
“ ‘ Whereas, a doubt exists as to the number of boys it is the duty of the University of Louisiana to educate at one time under the provisions of Ordinance No. 6767, A. S., and as it is for the best interest of all parties that the same should be amicably arranged, and that equal justice should be done both to the University and to the Oity;
“ ‘ Be it resolved by the Board of Administrators of the University of Louisiana, that the board, etc., binds and obligates themselves always to educate at one time ten boys of indigent parents, said boys to be appointed ill the manner pointed out in the Ordinance No. 6767 aforesaid, all vacancies to be filled by the mayor. It being the full intent of this resolution that there shall always be ten boys, as aforesaid, educated free in the university at one and the same time, and no more; the term of tuition to be four years, said students to be subject to the same rules when admitted as other students.’
“ Mr. Baldwin entered while the motion was being considered, and the president restated the case. Mr. Lafitte then offered the board the resolution prepared by the city attorney. Mr. Lavillebeuvre seconded it, and it was unanimously carried.”
Taking into consideration the foregoing proceedings and resolutions of the Board of Administrators, and giving to them the full weight and force to which they are entitled, it is our opinion that they do not evidence a compromise, for the main reason that they *869 were ex parte. It is quite true that they disclose that the president of the Board of Administrators had an interview with the city attorney in reference to city scholarships, “ and that, to save the university from the expense of litigation, he had agreed to present to the board a resolution drawn up by the city attorney, with some changes agreed to by the same person, settling the matter by compromise;” but neither the proceedings nor the resolution of the board declare that the. city attorney had authority to bind the city in any manner, or that he had acted on the request or at the suggestion of the proper city authorities in so doing. And the proceedings, as well as the resolution, show that it was the resolution of the Board of Administrators alone that construed their previous contract, without the sanction or concurrence of the city; and it is therefore not binding on the city as a compromise.
The defendants’ counsel invite our attention to their willingness to receive and educate five boys of indigent parents as stipulated in the Ordinance 6767 and refer to the altered phraseology of the Ordinance No. 7050, adopted January 3, 1882, in this respect. It is as follows, to -wit:
“Ordinance 7050: Be it resolved, That the mayor is hereby authorized to select and appoint said five cadets from among the deserving boys or lads attending the public schools of the city of New Orleans. Adopted January 3, 1882.”
That ordinance did not and could not alter the terms of the prior ordinance and the contract made under it in any respect. Under this last ordinance the appointing power was conferred upon the mayor alone, in lieu of the mayor and administrators of the city; but it did not relieve the mayor from the duty of making selections of appointees from those boys who have indigent parents — the language of this ordinance being “to select and appoint said five cadets.” It is of equivalent import. We do not regard it of any special consequence that the mayor acted on the faith of the alleged compromise and annually appointed the number of boys therein designated. The. city could be no more bound or estopped by the ex parte action of. that officer, in this respect, than in attempting to effect a compromise, or in assenting to it after it was made as stated.
Judgment affirmed.